**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                )
MARK WHITNEY,                                    )
                                                 )
        Plaintiff,                               )
                                                 )
        v.                                       )        Civil Action No. 11-1409 (RWR)
                                                 )
BARACK OBAMA, <u>et al.</u>,                     )
                                                 )
        Defendants.                              )
_____ )

<u>MEMORANDUM OPINION</u>

Plaintiff Mark Whitney brought this action for declaratory and injunctive relief against President Barack Obama and the United States, challenging under the War Powers Resolution[1] the President's authority to deploy United States armed forces to Libya.  The defendants have filed a suggestion of mootness, arguing that the military activity of which the plaintiff complains ended in 2011.  Whitney opposes, contending that the case still presents a live controversy due to the fact and effects of the U.S. military's continuing presence in Libya, and the likelihood that the alleged violation will recur in both Libya and Syria.  Because the case is moot and does not satisfy

_____

[1] "The War Powers Resolution requires that military actions commenced by the President . . . be terminated if, after sixty days, Congress has not declared war or authorized the use of military forces." <u>Kucinich v. Obama</u>, Civil Action No. 11-1096 (RBW), 2011 WL 5005303, at *12 n.3 (D.D.C. Oct. 20, 2011) (citing 50 U.S.C. § 1544).

the exception to the mootness doctrine, the complaint will be
dismissed.[2]

BACKGROUND

On March 17, 2011, the United Nations Security Council
approved Resolution 1973 (2011), which imposed a no-fly zone over
Libya and authorized "all necessary measures" other than foreign
occupation to "end . . . the current attacks against civilians"
in that country.  SECURITY COUNCIL SC/10200, *available at*
http://www.un.org/News/Press/docs/2011/sc10200.doc.htm.   NATO
"answered the call[]" by launching Operation Unified Protector.
"WE ANSWERED THE CALL" – THE END OF OPERATION UNIFIED PROTECTOR,
http://www.nato.int/cps/en/SID-50A86982-5F805C35/natolive/news_80
435.htm (last visited February 26, 2012).  By March 28, 2011,
President Obama "commit[ted] U.S. forces to the U.N.-authorized
military mission in Libya[.]"  OBAMA: NOT ACTING IN LIBYA 'WOULD HAVE
BEEN A BETRAYAL OF WHO WE ARE,'
http://articles.cnn.com/2011-03-28/politics/us.libya_1_libya-miss
ion-libya-policy-libyan-leader-moammar-gadhafi?_s=PM:POLITICS
(last visited Feb. 26, 2012).  He announced that the U.S. would
"play 'a supporting role -- including intelligence, logistical
support, search-and-rescue assistance, and capabilities to jam

---

[2] This opinion assumes that Whitney had standing to sue in
the first instance.  See Campbell v. Clinton, 203 F.3d 19, 28
(D.C. Cir. 2000) ("[W]e may assume standing when dismissing a
case as moot.").

regime communications[.]'"  Id.  (Accord Defs.' Suggestion of

Mootness ("Suggestion"), Ex. 1, E. O. Joseph McMillan Declaration

("McMillan Decl.") ¶ 2.)  "[F]ollowing the death of [Libyan

leader] Muammar Qaddafi and the defeat of Qaddafi-regime forces"

on October 23, "the [U.S.] ceased air operations in support of"

Operation Unified Protector on October 31.  The U.S. military

personnel remaining in Libya are there to support the diplomatic

mission.  (McMillan Decl. ¶¶ 3-4.)

     Whitney's complaint seeks an injunction directing the

President to terminate the use of U.S. armed forces in support of

the U.N.-authorized military mission in Libya.  The defendants

assert that the case is now moot and must be dismissed.

I.   THE MOOTNESS BAR

     "It is a basic constitutional requirement that a dispute

before a federal court be 'an actual controversy[3] . . . extant at

all stages of review, [and] not merely at the time the complaint

is filed.'"  Newdow v. Roberts, 603 F.3d 1002, 1008 (D.C. Cir.

2010) (quoting Steffel v. Thompson, 415 U.S. 452, 459 n.10

(1974)) (alteration in original).  "'[W]hat makes [a judicial

pronouncement] a proper judicial resolution of a "case or

_____

     [3] The "'controversy requirement means that, throughout the
litigation, the plaintiff must have suffered, or be threatened
with, *an actual injury* traceable to the defendant and [which is]
likely to be redressed by a favorable judicial decision.'"
Daskalea v. Wash. Humane Soc'y, 710 F. Supp. 2d 32, 39-40 (D.D.C.
2010) (quoting Spencer v. Kemna, 523 U.S. 1, 7 (1998)) (emphasis
added).

-4-

controversy" rather than an advisory opinion [] is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.'" <u>Nat'l Ass'n of Home Builders v. Salazar</u>, Civil Action No. 10-832 (GK), 2011 WL 6097988, at *6 (D.D.C. Dec. 8, 2011) (quoting <u>Hewitt v. Helms</u>, 482 U.S. 755, 761 (1987)) (emphasis in original).  If "'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome[,]'" the case is considered moot.  <u>Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n</u>, 628 F.3d 568, 576 (D.C. Cir. 2010) (quoting <u>Cnty. of L.A. v. Davis</u>, 440 U.S. 625, 631 (1979)).  Moot cases "must be dismissed[,]" <u>id.</u> (internal quotation marks and citation omitted), where "events outrun the controversy such that the court can grant no meaningful relief," <u>Del Monte Fresh Produce Co. v. United States</u>, 570 F.3d 316, 326 (D.C. Cir. 2009) (Sentelle, J., dissenting) (internal quotation marks and citation omitted).

The defendants, who bear the "heavy burden" of establishing mootness, <u>Honeywell</u>, 628 F.3d at 576, describe how the actions Whitney challenged in 2011 had ceased by 2012 (Suggestion at 2).[4] Whitney sought to enjoin the defendants from continuing U.S.

---

[4] For the defendants to establish mootness, it may not be enough for them to claim that they voluntarily ceased the challenged activity.  "The President's cessation of the [activity in Libya] was not 'voluntary[.]' . . .  [T]he [military mission] ended because [NATO prevailed], not because the President sought to avoid litigation."  <u>Campbell v. Clinton</u>, 203 F.3d 19, 34 n.14 (D.C. Cir. 2000) (Randolph, J., concurring).

-5-

military participation in NATO Operation Unified Protector (Pl.'s
Mot. for a Prelim. Injunc. ("Pl.'s Mot.") ¶ 2),  which was
undertaken to "protect civilians from attack or the threat of
attack in Libya[,]"  NATO AND LIBYA - OPERATION UNIFIED PROTECTOR,
http://www.nato.int/cps/en/natolive/71679.htm (last visited Feb.
26, 2012).  In October of 2011, President Obama recognized the
Libyan Transitional National Council's declaration of liberation,
and NATO announced that the "Alliance's job to protect civilians
from the threat of attack [wa]s done." (Suggestion at 2
(citations omitted).)  The United Nations Security Council
likewise terminated the "use-of-force provisions of resolution
1973 (2011)," effective October 31, 2011.  (Suggestion at 2
(quotation marks and citation omitted); id., McMillan Decl. ¶ 3.)
Since "the alleged 'hostilities' that formed the basis for
plaintiff's challenges in his Complaint[] have ended[]" (Defs.'
Reply to Pl.'s Opp'n to Suggestion of Mootness at 1), the
defendants conclude that Whitney's challenge to "[U.S.] support
for these international operations in Libya is moot[.]"
(Suggestion at 3.)

     The D.C. Circuit found a similar challenge to be moot in
1985.  Conyers v. Reagan, 765 F.2d 1124 (D.C. Cir. 1985).  In
Conyers, eleven members of Congress challenged the military
invasion of Grenada in October of 1983 as violative of the War
Powers Clause of the United States Constitution.  Id. at 1125-26.

-6-

The President, who "stated that he ordered the invasion to
protect innocent lives," withdrew all combat troops by
December 15 of that year.  Id. at 1126.  However,
"[a]pproximately 300 United States military personnel remained in
Grenada to maintain order and assist in training the Grenadian
police force."  Id.  By the time the case reached the D.C.
Circuit, "the actions complained of ha[d] long since ended[.]"
Id. at 1125.  Accordingly, the D.C. Circuit dismissed the appeal
as moot and remanded the case for the district court to vacate
its judgment.  Id. at 1127 (noting that the controversy
requirement applies equally to requests for declaratory and
injunctive relief), 1129.  The court also described as "dubious"
the plaintiffs' "attempt to avoid mootness" by arguing "that the
mere presence of military personnel in Grenada, under peaceful
circumstances, continues to violate the War Powers Clause."  Id.
at 1127.

        In light of Conyers, Whitney's claims have become moot.
"[T]he [U.S.] ceased air operations in support of" NATO's
Operation Unified Protector on October 31, 2011, and Whitney
cites no authority for the proposition that the War Powers
Resolution covers the continued presence of peaceful troops.
(McMillan Decl. ¶ 4.)  Because "[t]he clash . . . has subsided,
and what occurred during the dispute cannot be undone[,]" Bhd. of

-7-

<u>Maint. of Way Employees v. Atchison, Topeka and Santa Fe Ry.</u>,
Civil Action No. 95-2031 (TFH), 1996 WL 435018, at *2 (D.D.C.
Apr. 11, 1996), "the court can grant no meaningful relief[.]"
<u>Del Monte</u>, 570 F.3d at 326 (Sentelle, J., dissenting) (internal
quotation marks and citation omitted).  The declaratory judgment
Whitney seeks would constitute an "improper advisory opinion"
since no live dispute remains.  <u>Conservation Force v. Salazar</u>,
715 F. Supp. 2d 99, 105 (D.D.C. 2010); <u>Conyers</u>, 765 F.2d at 1128
("[A] request for declaratory relief [is] moot [if] . . . there
is [no] substantial controversy, between parties having adverse
legal interests, *of sufficient immediacy and reality*[.]")
(internal quotation marks and citation omitted).  Granting
injunctive relief likewise would prove ineffectual, as the
challenged actions have long since ceased.[5]  Accordingly,
Whitney's claims are moot.

II.  THE EXCEPTION TO THE BAR

     The D.C. Circuit has recognized the "capable of repetition,
yet evading review" exception to the mootness doctrine, <u>see,
e.g.,</u> <u>Honeywell</u>, 628 F.3d at 576, when "intervening events beyond

_____

     [5] Whitney argues that an injunction would: 1) "allay[] [his]
concerns for his ability to criticize the President[,]" 2) show
"Qadaffi [*sic*] factions . . . that while the President may be
their enemy, the U.S. citizenry is not[,]" and 3) "restore the
proper balance of powers among the Legislative and Executive
Branches."  (Pl.'s Opp'n at 3-4.)  These speculative assertions
in no way obviate the requirement that federal courts dismiss
cases posing no live controversy.

the [parties'] control . . . appear to have rendered the claims moot." Conyers, 765 F.2d at 1128 n.9.  "[A] controversy is capable of repetition, yet evading review where both of the following two requirements are met: 1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and 2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." Habitat for Horses v. Salazar, No. 10 Civ. 7684, 2011 WL 4343306, at *4 (S.D.N.Y. Sept. 7, 2011) (internal quotation marks and citation omitted).  Under the evading review prong, courts must "determine whether the activity challenged is 'inherently' of a sort that evades review[.]" Campbell v. Clinton, 203 F.3d 19, 34 (D.C. Cir. 2000) (citation omitted) (Randolph, J., concurring).  Since "offensive wars initiated without congressional approval are not in th[is] category[,]" neither are mere military missions "inherently short in duration." Id.; Conyers, 765 F.2d at 1128.  Whitney has not demonstrated that this dispute evades review.

Neither does Whitney satisfy the "capable of repetition" prong, since there is no "reasonable expectation" that Whitney will suffer the same alleged violation of the War Powers Resolution again. Honeywell, 628 F.3d at 576.  Though the War Powers Resolution was enacted nearly forty years ago, Whitney identifies only one instance in which any president arguably has

ever violated it. (Pl.'s Opp'n at 2.) See also Campbell, 203 F.3d at 34 (Randolph, J., concurring) ("How likely is [such a violation] to recur? Not very, if history is any guide."). Whitney also states that "entire sovereign regimes with their own developed military can be toppled in a matter of weeks or months." (Pl.'s Opp'n at 3.) "Accepting that prediction as accurate dooms [his] case." Campbell, 203 F.3d at 34.

> It means that the likelihood of this President, or some other, violating the 60-day provision of the War Powers Resolution is remote, not only because we can expect other Presidents to obtain congressional approval for wars lasting more than 60 days, but also because most military actions in the future (as plaintiffs agree) will be over before the 60-day limit for undeclared or unauthorized wars has been exceeded.

Id. Whitney has not demonstrated that the alleged harm is "capable of repetition, yet evading review," and has presented no authority reflecting that the benefits he sees from an injunction[6] provide an exception to the mootness doctrine. See Honeywell, 628 F.3d at 576.

## CONCLUSION

The military activities Whitney sought to enjoin have ended. The case is moot, and Whitney has established no applicable

---

[6] See n.5, supra.

-10-

exception to the mootness bar.  Accordingly, the complaint will

be dismissed.  A final order accompanies this memorandum opinion.

SIGNED this 27th day of February, 2012.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge